IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

DAVID LOPEZ-ANAYA

Plaintiff

vs                                                              CIVIL 06-2085CCC

Honorable ROBERTO SANCHEZ-RAMOS,
Secretary of Justice of the Commonwealth
of Puerto Rico;
MRS. SONIA PALACIOS-DE-MIRANDA
Former Director of the Forfeiture Board of
the Department of Justice of Puerto Rico;
MRS. LIZETTE MEJIAS-AVILES, Sub
Secretary of the Department of Justice of
Puerto Rico;
MRS. ALICE FONTANET, Human
Resources Director of the Department of
Justice of Puerto Rico;
MR. MARIANO VAZQUEZ, Legal Advisor
for the Secretary of Justice of Puerto Rico;
MRS. REINA COLON-DE-RODRIGUEZ,
Examiner of the Department of Justice of
Puerto Rico;
other unknown persons described as A, B,
C and D

Defendants

## OPINION AND ORDER

This 2006 case is now before us on a Motion for Summary Judgment filed September 7, 2007 by defendants Reina Colón-de-Rodríguez, Alice Fontanet, Lisette Mejías-Avilés, Sonia Palacios-de-Miranda, Roberto Sánchez-Ramos, and Mariano Vázquez **(docket entry 74).**[1]  Plaintiff opposed the motion on May 11, 2008 (**docket entry 112**).

Plaintiff   David López Anaya, a former Director of the Gurabo Center for Seized Vehicles of the Forfeiture Board (Board) of the Puerto Rico Department of Justice (DOJ) alleges he was suspended from work, and then later dismissed on September 22, 2006, due to his political affiliation with the New Progressive Party (NPP).  He alleges violations of his First and Fourteenth Amendment rights under the United States Constitution, pursuant to the Civil Rights Act, 42 U.S.C. §1983.

---

[1]The statement of uncontroverted material facts and the exhibits were filed September 10, 2007 (docket entry 77).

CIVIL06-2085CCC                                         2

## I. SUMMARY JUDGMENT STANDARDS

Summary Judgment "is proper if the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Rule 56 of the Federal Rules of Civil Procedure; Eileen McCarthy v. Northwest, 56 F.3d 313, (1st Cir. 1995). The nonmoving party must establish the existence of at least one factual issue that is both genuine and material to defeat a properly supported motion. Brennan v. Hendrigan, 888 F.2d 129 (1st Cir. 1989). The role of a Motion for Summary Judgment is to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts University, 976 F.2d 791,794 (1st Cir. 1999).

Although a Court analyzing a summary judgment motion must look at the record in the light most favorable to the non-moving party, the Court may not rely merely on unsubstantiated allegations. Rather, the non-moving party may only overcome a summary judgment motion upon presentation of proof sufficient to raise a genuine issue of material fact. See, Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988); Cruz v. Crowley Towing, 807 F.2d 1084 (1st Cir. 1986). Said another way, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion...." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).

On issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying upon evidence that is "merely colorable" or "not significantly probative". To the contrary, the nonmovant must present definite, competent evidence to rebut the motion. Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993), citing Mesnick v. General Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991). Summary judgment is appropriate even when elusive concepts like motive or intent are in play if the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation. Feliciano v. El Conquistador, 218 F.3d 1(1st Cir. 2000), citing Medina Muñoz v. R.J. Reynold Tobacco Co. , 896 F.2d 5, 8 (1st Cir. 1990). Therefore, the nonmoving party's failure to advance proof of the essential elements to establish his cause of action, and on which he has the burden of proof, warrants the dismissal of the case through Summary Judgment. Celotex v. Catrett, 477 U.S. 37, (1986).

CIVIL06-2085CCC                              3

In sum, to defeat a motion for summary judgment, evidence offered by non-movant "must be significantly probative of specific facts." Prescott v. Higgins, No. 07-2089, 2008 WL 3854008, *3 (1st Cir. Aug.20, 2008); Pérez v. Volvo Car Corp, 247 F.3d. 303, 317 (1st Cir. 2001).

## II. THE PARTIES' THEORIES

Defendants make the following arguments for summary judgment:[5]

1. Roberto Sánchez-Ramos should be dismissed as a defendant in his official capacity, as precluded by the Eleventh Amendment.

2. Movants were unaware of plaintiff's political affiliation; most of the defendants did not even know him personally.

3. Plaintiff was discharged as a result of his own irresponsible and negligent performance in his duties as Director of the seized vehicle lot in Gurabo.

4. Plaintiff's equal protection and freedom of association/political discrimination claims are insufficient as a matter of law.

5. Plaintiff failed to establish either a procedural or substantive due process claim under the Fourteenth Amendment.

6. Defendants Sánchez-Ramos and Mejías acted within their duties as provided by the Department of Justice's Organic Act.

By way of an opposition to the defendants' statement of uncontroverted facts, López-Anaya submits his own sworn statements dated March 8, 2007 and May 7, 2008, his deposition testimony, and other documents submitted as evidence.

With regard to the presence of defendant Secretary of Justice in his official capacity, plaintiff clarifies that only injunctive relief consisting of reinstatement to his career position is requested from Sánchez-Ramos.

---

[5]Notwithstanding movants' recognition of the Court's opinion and order on the motion to dismiss (docket entry 59), they once again argue dismissed claims. Such arguments will not be addressed again. They also discuss claims that plaintiffs never made, i.e. substantive due process and equal protection, which also will not be addressed.

CIVIL06-2085CCC                                4

Plaintiff confronts defendants' contention that they lacked knowledge of his political affiliation, and that he was discharged for cause, with a rehash of his allegations, including the conspiracy theory, which has already been dismissed.

## III. Factual Allegations

As alleged in the Amended Complaint, (docket entry 25), López-Anaya contends that, because he was hired in 1996 during an NPP administration, the defendants would take it for granted that he was a member of that political party. He states that his prior supervisors recognized his excellent work.[6]  Plaintiff avers that when defendant Sonia Palacios-de-Miranda, Executive Director of the Forfeiture Board and an alleged PPD supporter, was to that position in May, 2003, she joined forces with Mariano Vázquez for the purpose of terminating López-Anaya's employment in order to replace him with a member of the PPD. At this point, the Court notes that although Palacios-de-Miranda was appointed in 2003, the PPD administration had been in power since 2001, under former Governor Sila Calderón.

Plaintiff contends that several months after she was appointed, Palacios deprived him of his functions.  He also avers the matters raised by defendants as grounds for his discharge were a result of a concerted effort to build a record against him in order to justify his dismissal, a pretext for the real reason which was his political affiliation. He gives as an example--

> . . . on purpose [Palacios] did not order him to deliver to the Department of Transportation and Public Work the license plates that were already organized in boxes by plaintiff.  She had the obligation to give the  proper instruction to plaintiff for the delivery of the license plates but did not give the orders so as to have an excuse to blame plaintiff for the thousands of license plates that should have been delivered. In effect, she wrote then a report blaming plaintiff for not delivering the license plates, as part of the conspiracy to have a motive for the dismissal of plaintiff.

Amended Complaint, ¶7(b).

---

[6] In his amended complaint at ¶7b, plaintiff identifies his three previous supervisors as part of the PPD administration, two of whom he specifically describes as members of the PPD. He alleges that they refused to write memos against him at Vázquez' request because he was doing a good job.

CIVIL06-2085CCC                                    5

## IV.  POLITICAL DISCRIMINATION

We initially note that plaintiff fails to set forth individual claims identifying the specific violation or the factual basis for each. It is, however, obvious that his First Amendment claim is for political discrimination.  Therefore, the first issue that we must address is the question of whether López-Anaya has presented evidence which adequately supports a prima facie cause of action for political discrimination as to each defendant.

> A prima facie case of political discrimination in violation of First Amendment requires evidence that (1) the public employee and the defendant belong to opposing political affiliations, (2) the defendant has knowledge of the employee's affiliation, (3) a challenged employment action occurred, and (4) political affiliation was a substantial or motivating factor behind the adverse employment action.

Martínez Vélez v. Rey Hernández, 506 F.3d 32 (1st Cir. 2007) (quoting Peguero-Moronta v. Santiago, 464 F3d 29, 48 (1st Cir. 2006).

That an adverse employment action occurred is undisputed: plaintiff was first suspended and then, after a hearing, was discharged from his career position.  The other requirements for establishing a prima facie case require scrutiny.

Merely juxtaposing that he was a member of a non-controlling political party and that defendants were affiliated with the controlling party is insufficient, standing alone, to create the requisite causal link.  Carrasquillo v. Puerto Rico ex rel. Justice Dept., 494 F.3d. 1(1st Cir. 2007); Marrero-Gutiérrez v. Molina, 491 F.3d.1,9-10(1st Cir. 2007); Borges Colón v. Román Abreu, 438 F.3d. 1 (1st Cir. 2006).

Additionally, the evidence presented must comply with the federal rules of evidence. As explained by the Court of Appeals for the First Circuit in Bennett v. Saint-Gobain Corp., 507 F.3d. 13, 28-29 (1st Cir. 2007):

> In Dávila v. Corporación de Puerto Rico Para La Difusión Pública, 498 F.3d. 9 (1st Cir 2007) the plaintiff relied on an affidavit stating that others had told him that his supervisor considered him too old for the job.  But the plaintiff did not offer

CIVIL06-2085CCC                                    6

> an affidavit from any person who actually heard the alleged statement. Given this omission, we ruled that the statement was hearsay under the F.R.Ev. 801(c) and reiterated that it is black-letter law that hearsay cannot be considered on summary judgment.

<u>See</u>, <u>also</u>, <u>Montfort-Rodríguez v. Rey Hernández</u>, 504 F.3d. 221, (1st Cir. 2007); <u>Noviello v. City of Boston</u>, 398 F.3d. 76,84(1st Cir. 2005) (Evidence that is inadmissible at trial, such as inadmissable hearsay, may not be considered on summary judgment.)

When asked to whom at the DOJ he expressed his political affiliation, López Anaya replied, "Everybody who asked me." Plaintiff's deposition transcript (PDT) at p.50. In general, his beliefs about the political affiliations of most of the defendants are based on his assumption that because they were appointed by the PPD administration, they must belong to that party. We, therefore, examine the evidence regarding his actual knowledge of political affiliation and causal connection to the alleged discrimination, if any, as to each of the movants, as well as their knowledge of plaintiff's political affiliation.

1) <u>Lizette Mejías-Avilés</u>, Undersecretary of Justice–The only allegation in the amended complaint is that she did not have the authority to sign the September 22, 2006 discharge letter. When asked in his deposition what his political discrimination claim against Mejías-Avilés was, he stated, "Well, she signed a letter dismissing me; she was barely three months in the department when that took place. PDT at p. 58. Plaintiff never spoke about politics with her; he never told her his political affiliation. He has never spoken with her. PDT, at p. 53. In Mejía-Avilés' answers to plaintiff's request for admissions, submitted by defendants, she denied under penalty of perjury, having knowledge of his political affiliation. (Ex. 71 to Motion for Summary Judgment.)

2) <u>Roberto Sánchez-Ramos</u>, Secretary of Justice–López-Anaya has only seen him once, he has never discussed politics with Sánchez Ramos and the defendant has never told him his political affiliation. PDT at p. 53. Plaintiff's claim of political discrimination against

him is "Because of the documents I sent notifying him of what was going on, he never met

with me and not even sent anyone to meet with me."  PDT at p. 58.

    3) <u>Alice Fontanet</u>,  Director of Human Resources–Plaintiff never talked to her about

politics; he never informed her of his political affiliation.  PDT at p. 54.  With regard to his

political discrimination claim against Fontanet, López-Anaya stated that she, "should have

called me to give me a meeting, so I could explain the situation to her.  She never did so,

knowing what was going on.  Because, I also sent her documents."  PDT at p. 59.  In her

answer under penalty of perjury to plaintiff's request for admissions, Fontanet denied

knowledge of plaintiff's political affiliation.   Ex. 73 to Motion for Summary Judgement.

Plaintiff also stated that he knows her political affiliation with the PPD because she told José

Luis Sánchez-Negrón, an executive assistant to the Board, who told him so, <u>see</u>, PDT at pp.

55-56.  Sánchez Negrón, however, makes no such comment in his sworn statement dated

December 21, 2007, Plaintiff 's opposition, Exhibit H.

    4) With regard to <u>Mariano Vázquez</u>, legal advisor to the Secretary of Justice--López-

Anaya stated that they had told each other their affiliations.  PDT at pp. 56-57.  He also

stated that ". . . ever since Mariano Vázquez came in, the instructions he gave out to

Executive Directors was to fill my records with memos, so that they could kick me out

because I was NPP."  When asked how he knew this, plaintiff replied, "Because, the

Executive Director of Attorney Ramón Maldonado told me so and D.A. Mariano Rivera also

told me.  Two different directors and Mr. José Luis Sánchez also told me.  Two different

directors and Mr. José Luis Sánchez also told me."  PDT, at pp. 59-60.  Sánchez-Negrón,

in his sworn statement relates at ¶7, that at one Board meeting,  when "Mariano Vázquez

kept complaining about the way that the Gurabo lot was being handled and supervised by

[plaintiff]" another attendee at the meeting took out the resume of a PPD sympathizer for

consideration for López-Anaya's position.  Mariano Vázquez stops [her] and does not take

the resume telling her that, 'no, things are not like that, to him memos have to be sent and a file must be created.'"

5) Plaintiff believes that attorney Reina Colón-de-Rodríguez, the DOJ employee appointed as hearing officer for López-Anaya's pre-termination hearing, discriminated against him because she would have been biased against him.[7]  PDT at p. 53.  Plaintiff states that he told her his party affiliation at the hearing.  He claims to know her political affiliation because Juan Manuel Tirado-Ríos told him.  PDT at p. 57.  In her answers to requests for admissions, however, Colón-de-Rodríguez denied any support or affiliation for either the NPP or the PPD.

6) Sonia Palacios-de-Miranda, as Executive Director of the Board, was López-Anaya's superior during the period of the alleged and the investigation of ones occurring before she arrived.  Plaintiff states that he and Palacios-de-Miranda identified their political affiliations to each other.  Plaintiff's statement under penalty of perjury dated March 8, 2007, Exhibit A. He further states

> 3. That as soon Palacios de Miranda took over he post, she put me aside and started to give orders to the employees under my supervision. I had a talk with Mrs. Palacios de Miranda against that practice but she told me that she came to clean the house. I know that in Puerto Rico this phrase has a political connotation meaning to terminate or dismiss members of the political party who had lost the general elections.

Id.  (Our emphasis.)

In her answers to plaintiff's requests for admissions, Palacios-de-Miranda admitted that she knew of plaintiff's affiliation with the NPP.  However, she denied that she supports or is a member of either the NPP or the PPD, making the truth of the matter an issue of credibility. Defendants' Ex. 72.

---

[7]Plaintiff also alleges that Mejías-Avilés was acting *ultra vires* by signing the termination letter on behalf of the Secretary of Justice. The allegation is frivolous, especially in light of the provision allowing the Secretary of Justice to delegate such authority. See, 3 L.P.R.A. §292p, and is unworthy of discussion.

CIVIL06-2085CCC                                        9

As we stated above, merely juxtaposing that López-Anaya is an active member of the NPP and that the defendants are affiliated with the PDP is insufficient, standing alone, to create a causal link for political discrimination. True, such a connection is one among a myriad of possible inferences. Yet, even drawing all reasonable inferences in plaintiff's favor, it would be speculative to draw the forbidden inference from the range of possibilities. Marrero, supra, at p.10.

With regard to the parties' political affiliation, and defendants' knowledge of López-Anaya's affiliation to the NPP, his deposition testimony that he exchanged such information with defendants Palacios-de-Miranda, Vázquez and told Colón-de-Rodríguez at the termination hearing, are the only instances of admissible evidence to support an issue of material fact on that prong of a prima facie case. As to the other defendants, his assertions that they knew his affiliation are based on inadmissible hearsay or conclusory speculation. In the case of Reina Colón-de-Rodríguez, however, López-Anaya has no admissible evidence of her affiliation to refute her denial of any support or relationship to the two major political parties. Therefore, our examination leads us to conclude that plaintiff has not established the requisite of a causal connection between party affiliation and the discharge as to all defendants except Palacios-de-Miranda and Vázquez.

The defendants contend that plaintiff was discharged because of serious deficiencies and poor performance of his job. The record includes copies of or refers to over 20 memos[8] to López-Anaya from Palacios-de-Miranda, with regard to deficient and negligent performance of his duties and responsibilities. The salient points raised by the movants as cause for López-Anaya's dismissal include, among others:

---

[8]Defendant's Exhibits 47 through 63, dated June 26 and 30, 2003; August 28, 2003; September 29, 2003; December 1, 2003; December 22, 2003 January 14 and 15, 2004; February 29, 2004; March 10 and 17, 2004; April 6 and 16, 2004; May 3 and 10, 2004 and August 8, 2004. Defendant's exhibits make reference to memos from Palacios-de-Miranda to him dated November 5, 2004; December 1, 2004; September 28, 2005; and October 7, 2005.

CIVIL06-2085CCC                              10

1. Serious deficiencies in the procedures and process for recycling vehicles, including lack of organization and proper coordination;

2. Absence of control and organization of the license plates of seized vehicles. Plaintiff had not delivered the license plates to the Department of Transportation and Public Works, nor did he have an inventory of those in his possession;

3. No inventory was kept of the seized vehicles nor was there a disposal record;

4. Improper control and irregularities in the disposal of seized vehicles;

5. The majority of the vehicles were recycled with their batteries, which were destroyed with the cars, causing acid spill into the ground;

6. Deficiencies in managing of documents of the seized vehicles;

7. Deficiencies in maintaining proper security and surveillance of the vehicles.

López-Anaya does not deny the disorganization, deficiencies, lack of inventories and records and other serious problems related to the management of the lot under his supervision.  Rather, he has explanations for these problems that refute the contentions of his incompetence.

That the responsibility for these deficiencies is not plaintiff's alone can be found in the October 6, 2004 internal auditing report DJ-04-04, defendants' Exhibit 80.  See, translation docket entry 95-2.  The introductory sentence of the report indicates that the scope of the audit was more extensive than the operations of the Gurabo vehicle lot:

> "We have audited the operations related to the seized property of the Forfeiture Board of the Department of Justice to determine if it was performed in accordance to the procedures, regulations and applicable laws.... The Forfeiture Board was created to function as custodian and dispose of the property acquired in the Commonwealth of Puerto Rico through the seizure."

Translations, (docket entry 95-2) Ex. 80, at p. 1.

Many of the report's findings demonstrate that the Board itself was also responsible for deficiencies:

CIVIL06-2085CCC                                    11

### Finding 1- Lack of rules and written procedures

a. There are no existing rules or written procedures which regulate the handling of the seized properties....[T]he Board has the duty to determine through regulations the rules as to control, use and disposal of seized property insuring the protection of the owners rights."

### Finding 2- Deficiencies related to the seized properties

d. The office supplies and equipment are maintained stored in the same place as the seized property.

e. In the vault of jewelry and seized property they do not maintain a registry of entry and exit.  Personnel outside of the property in custody come in and out without proper authorization.

### Finding 4– Lack of Expert Appraiser

a.  Two Service Workers perform Appraiser jobs without being certified.

In Regulation No. 1 of the Forfeiture Board, as amended, establishes in Article 10 that all vehicles shall be appraised by experts that have been selected by the Board and whose names appear in the Appraiser Registry that the Board establishes and maintains.

Id., at pp. 3-4, 6.

Recommendations were made by the auditors not only for López-Anaya, but also for the Deputy Administrator and the Executive Director of the Board.  Given that responsibility for deficiencies was also placed in the hands of plaintiff's superiors, a question of material fact exists as to whether the blame placed on plaintiff was a legitimate reason for discharging him or whether it was actually a pretext for a politically motivated termination.


## V. STATUTE OF LIMITATIONS

At page 29 of their motion, defendants Palacios-de-Miranda and Vázquez contend that the claims against them are time-barred. The factual argument as to this defense is incomprehensible:

Plaintiff, in his deposition, clearly alleged that he knew that defendant Mariano Vázquez was somehow part of his

CIVIL06-2085CCC                                        12

       allegations of political affiliation since the year 2000. . . .  As to
defendant Sonia Palacios de Miranda, the plaintiff stated that he
knew that she somehow was part of his allegations of political
affiliation since she took the position of Executive Director of the
Forfeiture Board, which was in the year 2003....

       Being that more than one year elapse since Plaintiff knew
of the alleged adverse employment action and the alleged
political discrimination by the aforementioned codefendants, and
the date in which he filed the complaint, the appearing
codefendants assert that the alleged damages due to fault or
negligence under both 42 U.S.C. §1983 and 31 L.P.R.A. §§5141
and 5142[9] are time barred by the one year statute of limitations.

They argue, at page 30, that "[b]eing that Plaintiff filed his original Complaint on
October 27, 2006 and that . . . he knew that . . . Vázquez was allegedly being part of the
political discrimination since the year 2000 . . ." and that he knew that Palacios "was allegedly
being part of the political discrimination since she took the position of Executive Director . ...
in the year 2003," the complaint is time barred as to these defendants."

The allegations of political discrimination in the amended complaint begin with events
in the year 2000, when Mariano Vázquez sought to discharge plaintiff because of his political
affiliation but was unable to do so because he could not get cooperation from López-Anaya's
supervisors. Thereafter, at a staff meeting, Vázquez allegedly stated that a record of
plaintiff's performance had to be made and memos had to be sent to him before López-
Anaya could be discharged.  Defendants' own evidence reflects that soon after the
appointment of Palacios-de-Miranda as Executive Director of the Board in May, 2003, she
began to identify the problems, incidents, and deficiencies occurring before she arrived, as
well as those occurring after, and to create of a written record, through memos, audits and
reports, of plaintiff's alleged incompetence and mismanagement as cause for his discharge.
Plaintiff alleges this was done as a pretext to discharge him because of his political affiliation.

-----

    [9]As we noted earlier, there is no claim made under either of these sections of the
Puerto Rico Civil Code .

CIVIL06-2085CCC                              13

López-Anaya invokes the "continuing violation" theory, based on a series of violations, to refute defendants' statute of limitations defense.

> The continuing violation doctrine encompasses both serial violations and systemic violations.  (fn.7)
>
> Under the serial violation branch of the continuing violation doctrine, a plaintiff may link a number of discriminatory acts emanating from the same discriminatory animus, even though each act constitutes a separate wrong.  If the plaintiff can forge that link, and can also show that at least one act in the series occurred within the limitations period, the suit may be considered timely as to all the acts.
>
> In order for the serial violation theory to apply, the act that falls within the limitations period must itself constitute an actionable violation. . . .  It follows inexorably that if the plaintiffs have failed to state an independently actionable claim based on the [political discrimination claim], they cannot rely on that incident to anchor the rest of their claims (each of which arose out of events that occurred well prior to . . . the earliest day within the limitations period.

Centro Médico del Turabo, Inc., v. Feliciano de Melecio, 406 F.2d 1, 7(1st Cir. 2005).

Section 1983 claims generally accrue when the plaintiff knows, or has reason to know of the injury on which the action is based.  Morán Vega v. Cruz Burgos, 537 F.3d. 14,20 (1st Cir. 2008) quoting Guzmán Rivera v. Rivera-Cruz, 29 F.3d. 3, 5 (1st Cir. 1994).  A plaintiff is deemed to know or have reason to know at the time of the act itself and not at the point that the harmful consequences are felt.  Id.

> The office of the misnamed doctrine is to allow suit to be delayed until a series of wrongful acts blossoms into an injury on which suit can be brought... It is thus a doctrine not about a continuing, but a cumulative, violation.

Limestone Development v. Village of Lemont, Ill., 520 F.3d. 797, 801 (7th Cir. 2008) (citations omitted).  The memos about his performance and mismanagement that were sent to plaintiff by Palacios-de-Miranda and the instructions by Vázquez that the way to get rid of plaintiff was by building a record are the wrongful acts which blossomed into his injury–the discharge on September 22, 2006.  López-Anaya's political discrimination claim having accrued on such date, the October 17, 2006 complaint was timely filed.

CIVIL06-2085CCC                                    14

## IV. QUALIFIED IMMUNITY

Defendants raise qualified immunity as a defense. In their verbose diatribe on the subject, they set forth the requisites for the applicability of qualified immunity, followed by a repetition of all the factual allegations against López-Anaya, and conclude that there were no violations of his constitutional rights.  Wrapping it up in a neat bundle, they contend that:

> Since there is no violation to the plaintiff's constitutional rights as alleged, this Honorable Court does not have to enter to consider the remaining prongs of the qualified immunity defense. Therefore, the appearing Defendants are entitled to Qualified immunity from suit and from liability.  In the alternative that this Honorable Court understands that the Defendants violated Plaintiff's civil rights, they were acting within their duties, so they were not aware that they were in any way violating his civil rights, nor would any person in their position think so.

Motion for Summary Judgment, at p. 36.

To determine whether an official is entitled to qualified immunity, the court needs to consider (1) whether the constitutional right alleged involved a clearly established one; and (2) whether a reasonable official in the same circumstances would have understood that his or her conduct violated that right.  Vega Santana v. Trujillo Panisse, 547 F. Supp. 2d 129, 140 (D. Puerto Rico 2008).

It has long been clearly established that the First Amendment protects non-policymaking public employees from adverse employment actions based on their political opinions.  Rodríguez Santana v. Commonwealth of Puerto Rico, 2007 WL 1437507 *3; Vélez Herrero v. Guzmán, 330 F. Supp. 2d 63, 67 (D. Puerto Rico 2004); see also Padilla García v Guillermo Rodríguez, 212 F.3d. 69, 74 (1st Cir. 2000).   Therefore, because Palacios-de-Miranda and Vázquez' actions may have violated plaintiff's right to be free from political discrimination, we must examine whether reasonable officers would understand that their actions violated a constitutional right.  Rodríguez-Santana, supra, at 4.*  We conclude that reasonable officials would understand that it is constitutionally impermissible to create a record of poor performance to justify the discharge of a government employee because of

CIVIL06-2085CCC                    15

his exercise of the constitutional right to affiliate with a given political party.  Therefore, the request for qualified immunity is denied.

## IV. The Fourteenth Amendment Claim

As stated above, plaintiff failed to set forth individual claims and identify the specific facts pertaining to them.  The only facts that seem to support a Fourteenth Amendment claim are those related to the pre-termination hearing.  As alleged at ¶3 of the amended complaint,

> Plaintiff was dismissed after a sham hearing that took place before codefendant Mrs. Reina Colón de Rodríguez, an employee of the Department of Justice specially assigned as an examiner, to preside [over] the hearing.  This hearing did not comply with the informal hearing mandated by the case of Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985) because it was not held before the employer but before an employee of the employer.  This examiner was not an independent examiner and had a conflict of interest between her loyalty to her employer and her duty to be impartial and objective in the evaluation of any evidence submitted to her and in deciding about credibility of witnesses.

At ¶12 López-Anaya alleges that "[t]he Secretary of Justice acted unconstitutionally in not providing plaintiff, prior from suspending him from his post, an informal hearing as per the 14th amendment of the U.S. Constitution and the cases of [Loudermill] and Paul v. Davis....[10]

_____

[10]Plaintiff also states at ¶13 or the amended complaint:

> That the administrative regulations as applied to plaintiff by the Secretary of Justice are unconstitutional. These regulations are the Guide for the Application of Corrective Measures and Disciplinary Measures and Disciplinary Actions of Administrative Order no. 2003-05 of June 17, 2003;  the Guide for the Application of Corrective Measures and Disciplinary Measures and Disciplinary Actions of Administrative Order no. 2000-06, known as the Rules of Conduct and Corrective Measures. According to the law of the two above cases of the U.S. Supreme Court, plaintiff was entitled to an informal hearing before being summarily suspended to clear his name, the hearing was not granted by the Secretary of Justice.

CIVIL06-2085CCC                          16

Although defendants present an extensive discussion of career status and constitutionally protected interests flowing therefrom, it is undisputed that López-Anaya was a career employee with a property interest in his position.

At the pre-termination stage, due process requires that the tenured public employee receive oral or written notice of the charges against him, an explanation of the employers evidence, and an opportunity to present his side of the story. Jackson v. Norman, 264 Fed Appx. 17, 19 (1st Cir. 2008) quoting Loudermill, supra.

> . . . there is no requirement that the hearing officer be impartial, indeed, the terminating employer may preside.... But that impartiality is not demanded does not itself determine whether bias can be so severe as to interfere with due process at the hearing itself. Chmielinski v. Massachusetts, 513 F.3d. 309, 318 (1st Cir. 2008). To demonstrate such a due process violation, however, the plaintiff would have to show that the alleged bias "deprived him of the opportunity to put his facts before the decisionmaker, or that there was an [ ] error of primary facts in the grounds used for the termination that could only be explained by bias." Id.

Jackson, supra, at 19.

In the five-page letter from Sánchez-Ramos dated November 4, 2005, plaintiff was suspended and notified of the intention to terminate his employment. Proper notice was provided in the letter that contained an extensive list of charges against him for which he was going to be discharged. It also notified him that he could be represented by an attorney, present evidence in his favor, and, that if the decision was unfavorable, he could appeal it to the Appeals Commission.

A hearing was held over a three day period, December 21, 2005, January 12, 2006 and February 14, 2006. He was represented by his attorney, Mayra López-Mulero, presented evidence and witnesses and his attorney argued on his behalf. As a result, four of the charges were dropped and the remaining seven were upheld. Due process does not require a guarantee that all of the charges will be dropped after the hearing. Cruz Velázquez

CIVIL06-2085CCC                                17

v. Rodríguez Quiñones, 550 F. Supp. 2d 243, 250 (D. Puerto Rico 2007).  In sum, the

pretermination hearing more than satisfied the requirements of procedural due process.

        López-Anaya's due process allegations with regard to his suspension are also

meritless.  As he states in his amended complaint, at ¶10, "That plaintiff's monthly salary was

$2,300.00 and he has lost and will lose such salary since September 22, 2006, that is, after

his termination.  Due process requirements generally do not attach to paid suspension.

Torres-Rosado v. Rotger-Sabet, 335 F.3d. 1, 9 (1st Cir. 2003).  As the Court stated:

> "The Supreme Court explained in *Loudermill* that a government
> employer who wishes to remove a worker immediately may
> suspend that worker with pay until the procedures associated
> with termination can be completed.... More recently, a
> unanimous Supreme Court rejected a categorical rule imposing
> constitutional due process requirements on suspensions without
> pay....  Plaintiff's paid suspension in this case, which caused
> only a very temporary deprivation of job functions and no
> financial loss, did not give rise to any constitutional entitlement
> to due process.

Id., at 9-10 (citations omitted).

        Therefore, we find that the failure to hold a hearing  prior to his suspension did not

violate plaintiff's right to procedural due process.

        Finally, we note that, in his opposition to the motion for summary judgment, López-

Anaya argues supplemental claims under Articles 1802 and 1803 of the Civil Code of Puerto

Rico.  However, no such claims were made in either the complaint or amended complaint.

        For the above-stated reasons, the Motion for Summary Judgment (**docket entry

74**) is GRANTED in part and DENIED in part.

        The motion is GRANTED as to the following:

        (1) The Procedural Due Process claim under the Fourteenth Amendment is

DISMISSED in its entirety.

        (2) The Political Discrimination claim under the First Amendment against defendants

Lizette Mejías-Avilés, Alice Fontanet, Reina Colón-de-Rodríguez and Roberto Sánchez-

CIVIL06-2085CCC                                    18

Ramos are DISMISSED. Sánchez-Ramos remains in his official capacity for purposes of equitable relief, if any.

    (3) The motion is DENIED as to the Political Discrimination claim against Mariano Vázquez and Sonia Palacios-de-Miranda in their personal capacity.

    SO ORDERED.

    At San Juan, Puerto Rico, on September 30, 2008.

                              S/CARMEN CONSUELO CEREZO
                              United States District Judge